**Dianne M. BAEHR, Appellee,**

v.

**Robert H. BAEHR, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 2005.
Filed Dec. 16, 2005.

Alden E. Bowen, Pittsburgh, for appellant.

Cathy S. Boyer, Butler, for appellee.

BEFORE: HUDOCK, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Father, Robert H. Baehr, appeals from the March 18, 2004 Order requiring him to pay $1,383 per month for the support of the parties' two minor children, that amount including $1,000 per month in child support, $302 per months as father's proportional share of health insurance, and $81 per month as his proportional share of the day care expenses.

¶ 2 The parties were married in November 1990 and separated in June 2001. Mother had primary physical custody of the parties' two minor children from the time of the parties' separation. She commenced this matter in July 2001 when she filed a complaint for support. After an August 2001 support conference, the court entered an Order requiring father to pay support for mother and children, and to provide health insurance for the family. Father later requested a de novo hearing, at which hearing it was determined that father's income had been reduced. A new Order was entered reducing his support obligation. He was still to provide health insurance for mother and children.

¶ 3 The parties were divorced in April 2003. At that time, father's APL payments to mother ceased, and he was no longer required to provide health insurance for her. His obligation to pay child support and to provide health insurance for the children continued.

¶ 4 In July 2003, father filed a petition for modification of the existing support Order, stating that the parties then had a shared custody agreement, and that he had been laid off from his employment, and thus would incur out-of-pocket expenses to pay the children's health insurance premiums. As a result, a new support Order was entered, reducing father's child support obligations. Also, as of November 2003, mother was ordered to provide medical insurance coverage for the children. Mother then filed a request for a de novo hearing on the matter.

¶ 5 The hearing ultimately was held February 24, 2004, at which time the following was revealed. Before the birth of the parties' first child in 1994, mother, who has an associate's degree in child care, worked as a pre-school teacher earning approximately minimum wage. During the parties' marriage, mother obtained a certificate indicating she had completed nine months of Microsoft computer training, however, she did not complete a degree in that field and never worked in that field. Mother returned to work in September 2003, after the parties' divorce, when she began a part-time job as a banker teller earning $7.50 per hour, or approximately $700 per month. Although in previous court Orders she had been imputed a monthly income of $1,000, the court reduced that amount to an earning capacity of $750 per month.

¶ 6 Father has a bachelor's degree in computer science, and had a twelve year employment history in the field. Although for five years father enjoyed a lucrative position with XiTech where he earned approximately $61,500 per year plus bonuses of approximately $30,000, he was laid off from that company in July 2003. In October 2003, he accepted a position as an independent contractor for a software company owned by his brother earning $16.50 per hour for a forty hour work week,[1] and was soon to be hired as an employee at the same rate. The court found father had not made a reasonable effort to find work commensurate with his abilities and thus imputed to him an annual earning capacity of $60,000, for an imputed monthly income of $3,604.

¶ 7 Although father had been paying for health benefits for himself and the children, he had to borrow significantly from his mother to do so. Father's employer offered to pay up to $400 per month for this benefit, but was unable to provide any information as to the coverage he intended to provide. Thus, the court ordered mother to obtain health insurance through her employer's established program. As a result, the court entered the underlying March 18, 2004 support Order requiring father to pay $1,383 per month, which included $1,000 for child support, $302 for health and dental insurance, and $81 for his proportional share of day care costs.

¶ 8 Father filed a motion for reconsideration which the court granted by its April 5, 2004 Order. The hearing, scheduled for April 16, 2004, did not take place, but was continued repeatedly at father's request. The Order granting the final continuance is signed by mother's counsel and indicates that both parties consented to the continuance. Finally, on October 7, 2004, the court heard oral argument on the motion; however, a February 11, 2005 docket notation indicates that no disposition as to the motion was rendered by the court.

¶ 9 Ultimately, on March 1, 2005, father filed the underlying notice of appeal from the March 18, 2004 Order. On March 7, 2005, mother filed a motion to quash the appeal as untimely. On March 18, 2005, this Court denied the motion without prejudice to re-file the motion at the time the appeal was listed for argument before this Court. Then, on September 19, 2005, this Court entered an Order in which we deferred decision on appellant's motion to quash until after oral argument. We must therefore rule on this motion at this time before addressing the merits of the appeal.

 ¶ 10 In her argument, mother contends that pursuant to Pa.R.C.P. 1930.2, **No Post–Trial Practice. Motions for Reconsideration,** a motion for reconsideration is deemed denied if not rendered within 120 days of its filing, and under the rule, appellant had 30 days from the 121st day in which to file the appeal. Thus, she contends, father's motion was deemed denied as of August 5, 2004, and he had 30 days from that day in which to file an appeal. Father, in contrast, argues that since both parties agreed to the continuance, and the October 7, 2004 date was already beyond the 120 day period, pursuant to Pa.R.C.P. 248, **Modification of Time,**[2] the parties implicitly agreed to an extension of the 120 day period. Father thus contends that his motion would have been deemed denied 120 days following argument, or on February 5, 2005, and he

---

1. Depending upon the hours worked over the course of a year, father's yearly salary would have been approximately $33,000 to $34,000, and his month salary approximately $2,700 to $2,800.

2. Pa.R.C.P. 248 provides that "The time prescribed by any rule of civil procedure for the doing of any act may be extended or shortened by written agreement of the parties or by order of court."

had 30 days from that date, or until March 6, 2005, in which to file his appeal. His appeal was therefore timely. The court apparently agreed with this argument as to Rule 248. *See* N.T., 10/7/04, at 22. We too agree and will not quash the appeal.

¶ 11 As to the merits, father argues the court erred: (1) by imputing a monthly net income of $750 to Mother; (2) by imputing to father a gross income of $60,000 per year and monthly net income of $3,604.10 rather than basing his support obligation on his actual income; and (3) by requiring father to reimburse mother for the cost of her maintaining health care for the parties' minor children where the evidence established father could provide comparable insurance coverage through his employer at a lower cost. *See* appellant's brief at 5.

> We review a court's determinations regarding support orders for an abuse of discretion. ... An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground.

*Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa.Super.2004) (citations omitted).

¶ 12 Father first contends the court erred in finding mother had an earning capacity of $750 per month when she had previously stipulated to an earning capacity of $1,000 per month. The court was unclear as to how mother's earning capacity had been established previously as $1,000 per month. Trial Court Opinion, 3/19/04, at 1. Based on the evidence presented at the February 2004 *de novo* hearing, however, it reduced her earning ca-

pacity to $700 per month, $50 more than her actual income. The court cited *King v. King*, 390 Pa.Super. 226, 568 A.2d 627 (1989), as support for its finding that wife's part-time schedule enabled her to care for her children, and therefore, it explained, it made a reasonable judgment the mother should be imputed an income less than her earning capacity, but more than her actual earnings. Trial Court Opinion, Shaffer, J., 3/31/05, at 1–2.

¶ 13 Father's chief complaints are that mother was not utilizing her training in computers or in child care, and was not working full time.[3] He cites Pa.R.C.P. 1910.16–2(d)(4), **Income Potential**, which states "[o]rdinarily, a party who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity." Father further argues that the court erred in its application of *King* since mother did not present evidence that she pursued part-time rather than full-time employment in order to care for her children.

¶ 14 We disagree with father's contention that mother has willfully failed to obtain appropriate employment. The evidence rather, as articulated above, reveals mother has a very limited work history, limited training, and an extremely modest earnings history. We also note that mother did seek work utilizing her training in child care. She testified that when she decided to go back to work in September 2003, she sought employment in the child care field and was offered a full-time job at $6.75 per hour, but given the distance from

---

3. Father also repeatedly contends that mother testified that she simply did not want to work at all. Appellant's brief at 14, 15, 17, 19. This is a misrepresentation of her testimony

in which she clearly stated she did not want to work *in the computer field*. N.T., 2/24/04, at 18.

her home, the schedule she would have worked, and presumably the modest earnings, her own child care costs would have been prohibitive. N.T., 2/24/04, at 13–14. As for her computer training, mother testified that her nine months of training in the computer field qualified her for a limited amount of work in computers. *Id.,* at 17. She said she attempted to find work in the computer field but never did, and no longer wishes to do so. *Id.,* at 6–7, 17–18. Now, she says, her certificate is "dated," presumably due to advancements in technology.[4] *Id.,* at 17. As for working full time, mother indicated that in her position as a bank teller, she worked as many hours as the bank offered her. *Id.,* at 5. She also indicated a willingness to accept full-time employment at the bank, stating she was next-in-line for such a position. *Id.* We find no abuse of discretion in the court's decision to impute to her an income slightly higher than she currently earns.

¶ 15 Although mother previously had been imputed a monthly income of $1,000, the February 2004 hearing was *de novo,* thus the court was not bound by its previous determinations. Citing the case of *Funk v. Funk,* 376 Pa.Super. 76, 545 A.2d 326 (1988), father contends the trial court was bound by the prior stipulations of the parties. Unlike *Funk,* however, the trial court here did not completely disregard evidence which pertained to mother's income and earning capacity. Rather, it considered her training and her current earnings and imputed to her an income slightly higher than her actual earnings. Trial Court Opinion, 3/19/04, at 1. "[P]ursuant to a petition for modification, the trier of fact may modify, or terminate the existing support order in any appropriate manner based upon the evidence presented." Pa.R.C.P. 1910.19(c). We find that based upon the evidence, the court did not abuse its discretion. We note that we are not affirming based upon *King,* but we may affirm on any basis. *Lucas v. Lucas,* 882 A.2d 523 (Pa.Super.2005).

¶ 16 Next, father asserts his child support obligation should have been calculated using his actual earnings of $16.50 per hour, and that the court erred in imputing to him an annual earning capacity of $60,000 per year, or $3,604.10 per month.

¶ 17 As a basis for its decision on this issue, the court cited Pa.R.C.P. 1910.16–2(d)(4), *see supra,* and stated that it did not believe father had made a reasonable effort to find employment commensurate with his ability. Trial Court Opinion, 3/31/05, at 2–3. As further evidence supporting this finding, the court considered father's age, earnings history and extensive work experience in the computer industry. *Id.*

¶ 18 We point out that

a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. *Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.*

---

4. We also note that father characterizes the computer field as being very volatile. Although he has a bachelor's degree, additional certifications, and extensive experience in the field, he was laid off and has experienced a significant decrease in pay, earning a third of his previous salary. It is unclear why he

apparently believes that mother, with her nine months of training and no work experience in the field, has more significant career opportunities ·and/or earning potential working with computers than she does in her current job at the bank.

*Woskob v. Woskob,* 843 A.2d 1247, 1251 (Pa.Super.2004) (citations omitted, emphasis supplied). In its March 2005 Opinion, the court expressly stated that it considered these very factors in making its determination that father's earning capacity was greater than his actual earnings. The record supports that conclusion.

¶ 19 The record reflects that father is not yet forty years old and there is no evidence in the record as to any physical or mental disability or illness. As of the February 2004 hearing, father had twelve years of experience in the information technology field. N.T., 2/24/04, at 22. In addition to his bachelor's degree in computer science, he had received "a lot of certifications," indicating that he has learned various additional computer-related skills. *Id.,* at 22–23. Prior to being laid off in July 2003, father worked for 5 years for XiTech, earning more than $60,000 in salary, plus bonuses, and therefore earning anywhere from $80,000 to $90,000 per year during that time. *Id.,* at 23, 42. The pertinent factors certainly indicate father's earning capacity is far greater than his actual earnings.

■ ¶ 20 "Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity." *Woskob,* at 1254. Father collected unemployment from July until October 1, 2003, at which time he was hired by his brother. *Id.,* at 23, 26, 31, 48. He testified that during his unemployment, he contacted various companies to inquire as to employment opportunities. *Id.,* at 29. When asked if had submitted his resume to all of the companies he contacted, he stated that he posted his resume on the website "Monster.com." *Id.,* at 29–30. His testimony indicates he may have contacted one employment agency (a.k.a. headhunting firm), but he could not remember the name of the firm or his contact's name. *Id.,* at 55–56. He said he had not one single interview from the time he was laid off in July 2003. When asked if he is still continuing his job search, father testified that although there are still times when he looks for opportunity, he "can't be looking for a job while I'm working 40 hours per week." *Id.,* at 31. We note that father was unemployed for two to three months before he began working full time for his brother's company. Accordingly, his more extensive job search lasted less than three months before he accepted a position making approximately one-third of his former salary. The trial court, as the finder of fact, heard the witnesses, and is entitled to weigh the evidence and assess its credibility. *See McClain v. McClain,* 872 A.2d 856, 863 (Pa.Super.2005). The court stated that based on the evidence presented, it did not believe father had made a reasonable effort to find employment commensurate with his ability. The record supports that finding.

■ ¶ 21 Finally, father alleges the court erred in determining that mother was to obtain health insurance through her employment and father was to reimburse her for his proportional share of the costs. He argues that since his employer was willing to pay $400 per month toward health care, which left a balance of $230, the cost of health insurance would be lower than through mother's work at a cost of $311.14 per month. N.T., 2/24/04, at 37. The court's decision on this issue was based upon father's testimony that he was unable to pay for health insurance and borrowed from his mother to do so, and also that father's employer was able to provide no information as to any health insurance coverage that would be provided by the company. The court therefore found that health care coverage obtained through mother's employer, an established

bank with established health plans, was "the most certain and cost-efficient" as compared to obtaining it through father's employer, which when father is hired will have only two employees, father and his brother, and is a new enterprise in what father characterizes as a very volatile field. *See* Trial Court Opinion, 3/31/05, at 3–4. The testimony of both father and his employer/brother supports the court's finding on this matter. *See* N.T., 2/24/04, at 42, 66–68.

¶ 22 Father relies upon 23 Pa.C.S.A. § 4326, **Mandatory inclusion of child medical support**, (b), **Noncustodial parent requirement**, in arguing that under the circumstances, the court has no discretion and it is mandatory that it Order him, as the non-custodial parent, to provide health insurance coverage. That statutory section provides, in pertinent part, that

> [i]f health care coverage is available at a reasonable cost to a noncustodial parent on an employment-related or other group basis, the court shall require that the noncustodial parent provide such coverage to the children of the parties.

23 Pa.C.S.A. § 4326(b). Father neglected to mention section (c), **Custodial parent requirement**, however, which provides:

> [i]f health care coverage is available at a reasonable cost to a custodial parent on an employment-related or other group basis, the court shall require that the custodial parent provide such coverage to the children of the parties, *unless adequate health care coverage has already been provided through the non-custodial parent*. In cases where the parents have shared custody of the child and coverage is available to both, the court shall require one or both parents to provide coverage, taking into account the financial ability of the parties and the extent of coverage available to each parent.

*Id.*, § 4326(c) (emphasis supplied). The court reasonably may have concluded that father did not prove that "adequate health care coverage" was provided through his employer, since his employer had no information as to any health care plans it intended to provide. *See* N.T., 2/24/04, at 66–67. Father, moreover, repeatedly has argued to the court in an effort to lower his support payments, that there exists between the parties a shared custody arrangement. In that case, Section 4326(c) provides that where coverage is available to both, the court determines which party provides the coverage based upon financial ability and the extent of coverage available to each parent. Father has been borrowing money to pay for coverage, and he could not provide any information as to the plan that will be available to him through his employer. Although his employer testified he intended to provide health care coverage for father and children, he was "still getting information from the insurance companies" at the time of the February 2004 hearing. N.T., 2/24/04, at 66–67. The court's decision therefore was perfectly appropriate.

¶ 23 Motion to Quash denied. Order affirmed.