J-A06026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DIANE FRAME | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| LEWIS R. FRAME, JR. | |
| Appellee | No. 1906 EDA 2014 |

Appeal from the Order Entered June 5, 2014
In the Court of Common Pleas of Chester County
Domestic Relations at No(s): 00644 N 2004
Pacses Case No. 662106294

--------------------------------------------------------------------------------

| DIANE D. FRAME | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| LEWIS R. FRAME JR. | |
| | No. 2125 EDA 2014 |

Appeal from the Order Entered June 5, 2014
In the Court of Common Pleas of Chester County
Domestic Relations at No(s): 00644 N 2004
Pacses Case No. 662106294

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                                    **FILED APRIL 23, 2015**

Lewis R. Frame, Jr. ("Father") appeals from the order entered June 5, 2014, in the Chester County Court of Common Pleas, retroactively modifying his child and spousal support payments (Docket No. 1906 EDA 2014). Diane

D. Frame ("Mother") cross-appeals from the same order (Docket No. 2125 EDA 2014).[1]  The appeals have been consolidated for disposition, and based upon the following, we affirm.

The facts underlying these appeals are well known to the parties, who have been before this Court on two prior occasions.[2]  For purposes of this appeal, we note Father and Mother were married in April of 1995, and separated in February of 2004.  No divorce decree has been entered.  The parties have one child, a son born in March of 1996, who graduated from high school in 2014.  Since 2005, the parties have been litigating alimony and child support issues, particularly with respect to Father's income.  Father and his family are real estate developers, who own and operate a number of business entities.  Although Father has been involved in these companies over the years, it appears he rarely received a salary, but maintained his lifestyle through financial "gifts" he received from his parents.[3]

---

[1] Although Mother filed a cross-appeal, she does not raise any issues in her brief, but merely responds to the claims raised by Father on appeal. Therefore, we consider any potential cross-appeal claims waived.

[2] For a detailed history of the facts and the parties' financial holdings **see Frame v. Frame** ("**Frame I**") 907 A.2d 1143 [2382 EDA 2005] (unpublished memorandum at 1-10) (Pa. Super. 2006).

[3] In Mother's first appeal to this Court, in July of 2006, we noted that the parties' yearly expenses exceeded $200,000.  **Id.** (unpublished memorandum at 2).

On July 14, 2005, the trial court entered an order directing Father to pay Mother child and spousal support from March 31, 2004. Mother filed an appeal to this Court contending the trial court abused its discretion in (1) accepting the testimony of Father's vocational evaluator to determine Mother's imputed income, and (2) "crediting the testimony of [Father's] forensic accountant with regard to the computation of [Father's] income." *Frame I* (unpublished memorandum at 12). A panel of this Court affirmed in part, and reversed in part. Specifically, the panel found no abuse of discretion on the part of the trial court in determining Mother's imputed income. However, with respect to Father's income, the panel found that Father's forensic accountant did not have "an accurate picture of the reality of [Father's] financial situation." *Id.* (unpublished memorandum at 14). This Court was particularly concerned with Father's ability to maintain a "lavish lifestyle," which included $50,000 of annual maintenance on his $2 million home, based upon the accountant's imputed annual income of $128,907. *Id.* (unpublished memorandum at 14-15). Therefore, the panel remanded the case "for a new hearing before a new trial court judge to determine or impute [Father's] actual income and actual ability to pay based on the reality of the financial situation presented here." *Id.* (unpublished memorandum at 16).

Upon remand, a different judge conducted three additional days of support hearings. Thereafter, the court entered a new support order on

September 21, 2007, from which Father appealed, and Mother cross-appealed.

On September 9, 2008, a panel of this Court, once again, vacated the order on appeal and remanded for further proceedings. ***Frame v. Frame*** ("***Frame II***"), 963 A.2d 577 (Pa. Super. 2008). Although the panel found Father's issues meritless, the panel agreed with Mother that the trial court erred in "treating the payments to Father from his parents as gifts or loans **excludable** from 'income' [for support] as defined in [23 Pa.C.S. §] 4302." ***Id.*** (unpublished memorandum at 18) (emphasis supplied). The panel emphasized that "Father … is employed by the people from whom he receives substantial amount of cash each year in addition to his salary … [and] his lifestyle depends on these infusions of cash." ***Id.*** (unpublished memorandum at 23). The panel also rejected Father's claim that the transfers were loans, which he was required to repay, based upon the lack of any repayment schedule, "scant evidence" of Father's actual repayment of any principal, and the sheer amount of the debt (more than $2.7 million) as compared to Father's declared annual income ($125,000). ***Id.*** (unpublished memorandum at 24). Therefore, this Court vacated the September 21 2007, support order and remanded the case to the trial court for a recalculation of the parties' obligations "by including as income available for support the annual cash contributions received by Father from his parents, during the marriage and beyond[.]" ***Id.*** (unpublished memorandum at 25).

- 4 -

Thereafter, Father filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which entered the following order on June 23, 2009:

> **AND NOW**, this 23rd day of June 2009, the Petition for Allowance of Appeal is **GRANTED**, the order of the Superior Court is **VACATED**, and the order of the trial court is **REINSTATED**. *See Humphreys v. DeRoss*, 567 Pa. 614, 790 A.2d 281 (2002) (Section 4302 of the Domestic Relations Code does not include "gifts" in definition of income; a party's assets may, however, be relevant in determination of an upward deviation from the Support Guidelines); *accord Jacobs v. Jacobs*, 884 A.2d 301 (Pa. Super. 2005); Pa.R.C.P.1910.16–5.

*Frame v. Frame* ("*Frame III*"), 974 A.2d 1160 (Pa. 2009).

Upon remand, the trial court reinstated its September 21, 2007, support order. On April 5, 2012, Father filed a petition to vacate spousal support, contending that he had been paying Mother alimony for a period longer than the parties' marriage. On May 9, 2012, upon Father's petition for primary physical custody, the trial court entered an order awarding Father and Mother shared legal and physical custody of the child, then 16 years old.[4] It is undisputed, however, that from August 1, 2012, until his high school graduation in 2014, the child lived solely with Father. Accordingly, by agreement of the parties, Father's child support obligation was terminated effective August 1, 2012.

---

[4] In **Frame II**, this Court noted that "Father and Mother began to share physical custody of [child] during alternate weeks on June 17, 2005." **Frame II**, **supra** (unpublished memorandum at 9).

On March 5, 2013, Mother filed a ***Krebs***[5] petition seeking to retroactively modify Father's support obligation. Specifically, Mother claimed she had recently learned that Father "knowingly concealed substantial increases in income from 2004 forward [which were] significantly greater than he disclosed in sworn testimony in 2007 [such that Father had] perjured himself" at the prior support hearing. Petition to Retroactively Modify Support Order *Sur* ***Krebs***, 3/5/3013, at ¶ 5. Mother also filed a contempt petition based upon Father's misrepresentations.

In April of 2013, Father filed competing ***Krebs*** and contempt petitions, nearly identical to those filed by Mother a month earlier, alleging Mother had "knowingly concealed substantial increases" in her income.[6] Petition to Retroactively Modify Support *Sur* ***Krebs***, 4/5/2013, at ¶ 6; Petition for Contempt and Sanctions (Perpetration of Fraud on Court) *Sur* ***Krebs***, 4/9/2013, at ¶ 6. Following several support hearings, during which the trial

---

[5] ***Krebs v. Krebs***, 944 A.2d 768, 774-775 (Pa. Super. 2008) (holding (1) parties to a support proceeding must report any material changes that would affect support obligations; (2) the burden is on the party filing modification petition to prove modification is warranted and he/she filed petition promptly; and (3) "[w]here a misrepresentation has occurred … the court may order a modification of arrearages retroactive to the date a party first misrepresented income if the other party promptly filed a modification petition upon discovery of the misrepresentation.").

[6] Father also purportedly filed a petition for child support, seeking support from Mother during the period their son began living exclusively with him on August 1, 2012. That petition, however, is not included in the certified record.

court reconsidered the parties' respective incomes and earning potentials from 2007 until 2013, the trial court entered an order on May 30, 2014, retroactively modifying the Fathers' child and spousal support obligations. Thereafter, the court entered an amended order on June 5, 2014, correcting a typographical error in its prior order. This timely appeal, and cross-appeal, followed.[7]

As noted *supra*, Mother did not present any issues in her brief, but rather, merely responded to Father's claims. Accordingly, any potential claims on cross-appeal are waived, and we affirm the order at Docket No. 2125 EDA 2014.

Father raises the following six issues on appeal:

I.     Does this Court have jurisdiction over the spousal support portion of the appeal?

II.    Did the trial court abuse its discretion in finding [Mother] was not responsible for paying child support and denying Father an[] upward deviation when the evidence established that Father had sole physical custody of the minor child?

III.   Did the trial court abuse its discretion in awarding [Father] an earning potential beyond any amount he had ever earned and for performing a job position that he has not performed on a full time basis, that he lacks the normal education and credentials to hold, and that [he] never performed without retaining paid consultants and project

_____

[7] The trial court did not direct either party to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 7 -

managers handling the day-to-day operations of a family business?

IV. Did the trial court abuse its discretion in finding that the income earned by [Father's] mother['s] companies should be attributed to [Father] and adding the income to his earning potential where the evidence showed that [Father's] life style was subsidized by his parents' generosity and substantial assets and that he does not have the extensive ownership of his mother's companies that [Mother] claims?

V. Did the trial court abuse its discretion in finding that [Father] should continue paying alimony *pendente lite* when he has done so longer tha[n] the parties' marriage lasted?

VI. Did the trial court abuse its discretion in concluding that [Father] failed to properly notify the Court of his income when the evidence confirms that his income had actually decreased and [Mother's] income had increased?

Father's Brief at 4-5.

Preliminarily, we note that Father's first and fifth issues relate to the spousal support portion of the order.[8] As Father acknowledges, "[i]t is well-

_____

[8] On July 23, 2014, this Court issued Father a Rule to Show Cause as to the appealability of the spousal support portion of the order. *See* Order 7/23/2014. When Father failed to timely respond to the Show Cause order, this Court entered an order on August 6, 2014, stating "only issues regarding the child support portion of the order will be referred to the panel assigned to decide the merits of this appeal." Order, 8/6/2014. Thereafter, on August 28, 2014, Father filed a motion seeking to vacate the partial dismissal and reinstate his appeal, claiming neither he nor his counsel received a copy of the Rule to Show Cause. *See* Motion to Vacate Partial Dismissal and Reinstate Appeal, 8/28/2014, at ¶ 5. Thereafter, this Court entered an order granting Father's motion, and noting that "[t]he issue regarding both child support and spousal support from the June 5, 2014 order will be referred to the panel assigned to decide the merits of his appeal." Order, 9/19/2014. Accordingly, the appealability of the spousal support portion of the order is now ripe for our consideration.
*(Footnote Continued Next Page)*

- 8 -

recognized that a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved." *Capuano v. Capuano*, 823 A.2d 995, 998 (Pa. Super. 2003) (citations omitted).

However, Father argues this Court should assume jurisdiction over the spousal support portion of the award for two reasons: (1) the issue of Father's imputed income, as it related to spousal support, was already the subject of two prior appeals to this Court, and one appeal to the Pennsylvania Supreme Court, and (2) "the trial court's calculation of child support is intimately intertwined with the calculation of spousal support in this case" because both calculations depend on the court's purported incorrect imputation of income to Father. Father's Brief at 32.

First, we disagree with Father's contention that this Court already assumed jurisdiction of the spousal support issue in his prior appeals. A review of our prior decisions reveals that while Father's imputed income was the subject of the appeals, this Court focused on the **impact** of Father's income on the **child support** award. *See Frame I*, *supra* (unpublished memorandum at 16) (remanding to a new hearing before a new trial judge after concluding, "[t]he trial court's **child support** award based on the finding that [Father's]'s income has dried up is manifestly unreasonable and

*(Footnote Continued)* —————

a clear abuse of discretion.") (emphasis supplied); ***Frame II***, ***supra***
(unpublished memorandum at 1-2) ("[W]e consider the appeal of … [Father]
from the order of the [trial court] dated December 28, 2007, that denied him
relief on reconsideration of the trial court's order **relating to child support**
dated September 21, 2007, and entered on September 24, 2007.")
(emphasis supplied).  Therefore, we did not assume jurisdiction of the
spousal support portion of the order in the prior appeals.

Second, we also reject Father's contention that the spousal support
award is "intimately intertwined" with the child support award simply
because they both rely upon the court's determination of Father's imputed
income.  Indeed, in any appeal challenging the trial court's calculation of a
party's income or earning capacity with respect to child support, the court's
determination will also affect a corresponding spousal support award.
Nevertheless, we note that:

> The rationale behind [the rule declining to consider spousal
> support orders until a divorce is final] is that, for purposes of
> judicial efficiency, in the event that an initial award of interim
> relief is granted in error, the court has the power to make
> adjustments in the final settlement via the equitable distribution
> of marital property.  Thus, when all economic matters involved in
> a divorce are resolved, any support order can be reviewed and
> corrected when the court finalizes the equitable division of the
> property.

***Thomas v. Thomas***, 760 A.2d 397, 398 (Pa. Super. 2000) (citations
omitted).  Here, Father will have the opportunity to challenge the spousal
support award during, and on appeal from, the equitable distribution

proceedings. Accordingly, we decline to assert jurisdiction over the spousal support portion of the order in this appeal.[9]

Father's remaining issues relate to the child support portion of the trial court's June 5, 2014, amended order.

When considering an appeal from a child support order,

this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

**W.A.M. v. S.P.C.**, 95 A.3d 349, 352 (Pa. Super. 2014) (citations omitted). Moreover, "[t]he trial court, as the finder of fact, heard the witnesses, and is entitled to weigh the evidence and assess its credibility." **Baehr v. Baehr**, 889 A.2d 1240, 1245 (Pa. Super. 2005).

When, as here, a party seeks to modify an existing support order, the party seeking modification has the burden of proving "a modification is

_____

[9] We also decline Father's invitation to treat his notice of appeal as a petition for permission to appeal an interlocutory order pursuant to Pa.R.A.P. 1311. It was incumbent upon Father to petition this Court for permission to appeal, and his failure to do so precludes our review. **See Gellar v. Chambers**, 437 A.2d 406, 407 (Pa. Super. 1981) (quashing appeal when appellant failed to file Rule 1311 petition for permission to appeal despite the fact that the appellee did not object, and the trial court certified the issue for appeal pursuant to 42 Pa.C.S. § 702(b)).

warranted and that he/she promptly filed a modification petition." ***Krebs***, ***supra***, 944 A.2d at 774 (citation omitted). Furthermore:

> "An order modifying a prior support order is ordinarily retroactive to the date of filing of a petition for modification." Where a misrepresentation has occurred, however, the court may order a modification of arrearages retroactive to the date a party first misrepresented income if the other party promptly filed a modification petition upon discovery of the misrepresentation.

***Id.*** at 774-775 (citations omitted).

In his second issue, Father contends the trial court abused its discretion when it failed to order Mother to pay Father child support during the period of August 1, 2012, through June 2014, when Father had sole physical custody of their son. He argues the trial court "disregarded [Mother's] absolute duty to provide support for Child … and foisted the entire responsibility of providing for Child's needs on [Father]." Father's Brief at 34. Further, Father requests an upward deviation from the child support guidelines because he claims Mother made no expenditures "at all" on behalf of their son during that time. ***Id.*** at 35.

A review of the trial court's opinion accompanying the May 30, 2014, order, reveals that the court found both Mother and Father had failed to report changes in their income. However, with respect to Mother, the court noted that as a "W-2" employee, Mother "has no ability to manipulate her salary and related compensation." Trial Court Opinion, 5/31/2014, at 16. The court could not say the same for Father. In fact, the trial court described Father has having a "profound lack of credibility[,]" particularly

with respect to the purported "loans" he periodically receives from his parents to maintain his lifestyle. *Id.* at 16. Moreover, the court derided Father for representing during the 2007 support hearings that his net monthly income was only $10,011, when in April of 2006, he submitted a mortgage loan application on which he attested his net monthly income was $34,695. *Id.* at 6-7.

Although the trial court recognized that the "loans" from Father's parents could not be considered income available for support, *see id.* at 8, it credited the opinion of forensic accountant Mitchell Benson, CPA, who opined that Father had "an earning capacity of $188,268 per year for his development and management activities." *Id.* at 11. Moreover, the trial court found that Father "is in control of the financial and business entities associated with the Frame family, and that he controls the funds advanced by [his mother] to him or to the business." *Id.* at 12. Accordingly, from August 1, 2012, forward, the court determined that Father had a net monthly income of $17,500. *Id.* at 16, 26. During that same period, the court calculated Mother's net monthly income, as reflected on her tax returns, as $7,861 in 2012, as $5,939 from January 2013 until May 2013, and as $5,279 from June 2013 forward.[10]

_____

[10] Mother's employment with Keystone Custom Homes was terminated on May 31, 2013. For that time forward, the trial court imputed to Mother an earning capacity of $80,000 per year. *Id.* at 21.

Moreover, while the trial court did not specifically address Father's request for child support during the time he had sole custody of their child, it is evident from the court's opinion that the trial court determined Father had vastly more financial resources than Mother. *See Id.* at 14 (stating Father "has control of all the business entities and his use of the numerous corporate and personal credit cards 'for convenience' shows that this control allows him significant amount of income available for support."). Furthermore, the court noted the record contained no evidence of the reasonable needs of the child, and Father "failed to produce any credible evidence of his expenses." *Id.* at 22, 23. Accordingly, we detect no abuse of discretion on the part of the trial court in failing to award Father child support for the period from August 1, 2012, to June 2014.

Father's remaining issues - III, IV and VI – challenge the trial court's decision to modify his child support payments to Mother, and we will consider them together. Specifically, Father argues the trial court abused its discretion in imputing to him an earning capacity as a real estate developer when he lacked "any formal training or education" in the field, but had, in fact, "lived off his parents' generosity his entire life." Father's Brief at 36. Furthermore, he contends he worked only for his family's businesses, and "[i]t is … common for … family members to devote long hours to the family businesses for limited compensation[.]" *Id.* at 37. Moreover, Father argues the trial court abused its discretion in "essentially pierc[ing] the corporate veil without making any of the requisite findings." *Id.* at 39. He asserts:

There is no evidence that [Father's] ability to pay support was enhanced by advantages owing to his limited ownership or his management of the family businesses, or that the entirety of the corporate accounts was actually received by him or available to him.

*Id.* at 40.

Father also contends the court abused its discretion in determining he failed to accurately report his income when he actually lost income during the relevant period, and Mother had concealed increases in her income. He states "[t]his error is compounded by the fact that [Mother's] baseless claims that [Father] had been concealing income and assets have been repeatedly rejected by multiple courts, only to suddenly be accepted now." *Id.* at 46.

After a thorough review of the record, the parties' briefs, and the relevant law, we find that the trial court's June 2, 2014, opinion provides a thorough and well-reasoned discussion of its ruling retroactively modifying Father's child support payments from January 1, 2006, until August 1, 2012. Significantly, the court found that Father had misrepresented his income and, particularly, his control of the Frame family businesses. Accordingly, we adopt the sound reasoning of the trial court as dispositive with respect to these issues. *See* Trial Court Opinion, 6/2/2014, at 1-28 (finding (1) Father has an earning capacity as a "real estate developer and business manager," and, in fact, listed his occupation as "real estate developer" on his individual

tax returns;[11] (2) Father is "in control of all the financial and business entities associated with the Frame family, and … controls the funds advanced by [his mother] to him or to the businesses[;]"[12] (3) Father and his accountant testified in 2007 that Father did "**not** have control of the Frame family businesses" in contrast to their testimony during the present hearings that Father "has **total** control of all the businesses and has since [his father's] death in 2005 (before the 2007 hearing)[;]"[13] (4) Father's contention that the net monthly income reported on his 2006 mortgage application was determined by a bank employee who averaged three years of his income was incredible; (5) Father used both his personal and corporate credit cards to pay his personal expenses which demonstrated his control of the family businesses; (6) Father's control of the family businesses allowed the court to apply an upwards deviation from the support guidelines; and (7) while Mother's failure to report "substantial increases" in her income "tarnishes her credibility," Mother as "a 'W-2' employee … has no ability to manipulate her salary and related compensation."[14]).

_____

[11] *Id.* at 9, 10.

[12] *Id.* at 12.

[13] *Id.* (emphasis in original).

[14] *Id.* at 16-17.  The court noted, conversely, that Father had failed to provide his income tax returns for the years 2011 and 2012, ostensibly because he owed his accountant money.  The trial court opined:  "I find it highly suspect that the very returns that should be front and center are
*(Footnote Continued Next Page)*

Based upon its findings, and, particularly, its determination that Father has been less than candid with the court regarding his financial resources,[15] the trial court recalculated both Father's and Mother's income for the relevant time periods, and entered the support order at issue. Finding no abuse of discretion, we affirm.[16]

_(Footnote Continued)_ ─────────────

unavailable, despite [Father] having the burden of proof on this petition." *Id.* at 10 n.7.

[15] *See Baehr*, *supra* (noting the trier of fact determines credibility).

[16] Father's contention that the claim he has been "concealing income and assets" has been "repeatedly rejected by multiple courts" is simply untrue. Father's Brief at 46. In *Frame I*, a panel of this Court remanded the case for a new support hearing after determining that Father's "lavish lifestyle and valuable possessions" would be "utterly impossible" to maintain based on his stated earnings. *Frame I*, *supra* (unpublished memorandum at 15). Similarly, in *Frame II*, this Court remanded for further proceedings after concluding "the trial court abused its discretion by failing to recognize the cash payments Father received from his parents as income for support purposes[.]" *Frame II*, *supra* (unpublished memorandum at 25). While that decision was ultimately vacated by the Pennsylvania Supreme Court in *Frame III*, the Court did so because "gifts" are not considered income for support purposes. *Frame III*, *supra*. The Supreme Court did not comment on the legitimacy of Father's reported income or Father's credibility. Furthermore, it was not until the most recent hearings, in 2014, that Mother introduced Father's 2006 mortgage loan application which clearly demonstrated he had more income than he represented in the earlier support hearings.

Order affirmed. Mother's Application for Relief in the Form of Attorney's Fees-Costs is hereby DENIED.[17]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/2015

---

[17] We decline to award Mother attorney's fees in this appeal based in part on the trial court's determination that she, too, failed to disclose increases in her income.