J-S70009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARTHA STEWART KIMBLE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY BO KIMBLE, | |
| Appellant | No. 3520 EDA 2014 |

Appeal from the Order Entered October 24, 2014
in the Court of Common Pleas of Montgomery County
Civil Division at No.: 2010-26039

BEFORE:  DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 28, 2015**

Appellant, Gregory Bo Kimble, (Father) appeals from the trial court's October 24, 2014[1] order granting the petition of Appellee, Martha Stewart Kimble, (Mother) for contempt and specific performance of the marital settlement agreement, dismissing Father's petition to place money into escrow as moot, and ordering that Father pay child support to Mother as specified.  We affirm.

We take the facts and procedural history of this case from the trial court's October 24, 2014 opinion and order, the notes and testimony of the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court's order was dated October 23, 2014, but was filed on October 24, 2014.  We have amended the caption accordingly.

June 9, 2014 and October 15, 2014 hearing, and our independent review of the record.

Father and Mother are the parents of Child, (DOB: 1/03/07). Mother is a full-time social worker and Father is a retired NBA player with a college degree in communications. Father and Mother share legal and physical custody of Child. Father has two other children, an emancipated daughter who lives in Virginia, and a son with his current paramour. Mother has another child with her new husband.

Father and Mother were married on August 29, 1998. On August 16, 2002, Father and Mother executed a post-nuptial agreement, which provided, *inter alia*, that upon divorce, after Mother vacated the marital residence, Father agreed to pay Mother $50,000.00. (**See** Postnuptial Agreement, § 5(F)(1)). On May 21, 2012 the court entered a divorce decree which incorporated the post-nuptial agreement. (**See** Divorce Decree, 5/21/12). Both parties agree that Father has failed to pay Mother any of the $50,000.00 provided for in the post-nuptial agreement.

Mother filed her first request for child support on September 2, 2010. In a recommendation approved by the court *per curiam* on February 24, 2011, the special divorce Master determined that Father had the ability to earn an income of $100,000.00 and calculated his child support to be $1,314.00 monthly. On August 8, 2012, the Master issued a recommendation, approved *per curiam* by the court on August 13, 2012, which determined that Father had a net earning capacity of $50,000.00 and

calculated his child support obligation to be $750.00 monthly. Mother filed timely exceptions to this Order on August 17, 2012.

In November 2013, Father obtained a monetary settlement in a workers compensation case against the NBA. On November 15, 2013, Father filed a petition to place the proceeds of this settlement in escrow to be put towards child support. On November 19, 2013, the court scheduled Father's petition to be heard together with Mother's exceptions to the August 13, 2012 child support order. On November 25, 2013, Montgomery County Domestic Relations received a check containing funds from the settlement for $20,397.24, which it placed in escrow. On January 10, 2014, the court ordered these funds be released to Domestic Relations to be applied to this case. However, on January 23, 2014 the court vacated that order because of the November 19, 2013 order.

On March 4, 2014, the Master issued a recommendation that Father has an earning capacity of at least $3,000.00 per month, Mother has a salary of $2,800.00 per month, the parties have shared custody, and support is not warranted because the parties' incomes are essential equal. The trial court approved the recommendation *per curiam* on March 5, 2014. Both Father and Mother filed exceptions.

On June 9, 2014, the trial court held a hearing on the outstanding exceptions concerning child support and Mother's petition for contempt and/or specific performance of the post-nuptial agreement. During the hearing, Father testified that an NBA pension that he was entitled to had

gone to pay for a child support obligation in Virginia.[2]  (*See* N.T. Hearing, 6/09/14, at 133-36).   Father did not testify nor did counsel present any evidence that any source of income, other than the pension, was going toward his Virginia child support obligations.

On the adjourned date of the hearing October 15, 2014, the trial court explained to Father that

> . . . I want to say very clearly here in court because I don't want there to be any surprises.
>
> [Father], I don't find you credible.  You were evasive in your testimony.  You were constantly contradicted, both when asked on cross-examination, even questions by your own counsel.  I find it impossible to believe that you can't come up with—have no concept of where $117,000 went after you sold your home and that in the last four months you couldn't find any accounting of it.  You didn't make the effort.
>
> . . . Since 2008 you've applied for thirty-eight jobs, thirty-eight jobs total.  That doesn't support a family.
>
> I understand why you want the life you used to have.  I understand why you want to be the superstar N.B.A. player/movie producer.  We all would love to do that, but you don't have those opportunities anymore and you've got to figure out how you support your family.  And the fact that you got a job a few weeks ago doesn't do it.
>
> With your recognition and the way you can articulate clearly, you're an attractive man, you could go out and get a variety of jobs but you didn't think it was appropriate to apply for those jobs.  You applied for your dream jobs and one other until two weeks ago.

---

[2] Father testified that his daughter in Virginia was nineteen years old at the time of the hearing and that he currently owes $7,000 in arrears in support for her.  (*See* N.T. Hearing, 10/15/14, at 96).

> . . . You're not able to support your family on what you're trying to do but you have the luxury of other people trying to step up and cover all your expenses so you can live this lifestyle. You need to be a man and figure out how to take care of your children, and the one before me is [Child].
>
> Your testimony has not been credible about your efforts and I believe you have a much more substantial earning capacity than you pretend that you have here and that will be reflected in my decision, . . . I do not find you credible. I do not find that you have made any real effort at getting a job since 2008 and it's about time you look for a real job, not a $3.50 per package job but a real job where you have to spend your time, not just I'm going to make calls during the day and hope it works out and fly around country and have people put me up. That's your obligation as a father and you need to do it.

(N.T. Hearing, 10/15/14, at 108-10).

On October 24, 2014, the trial court entered an opinion and order ruling on the outstanding exceptions and petition for contempt. The trial court found that

> . . . Over the past eight (8) years Father has been unwilling to obtain gainful employment. Instead he has been supported in a variety of ways by different women. This support has enabled him to live a fortunate lifestyle in a luxury home, with access to luxury cars and travel without having to make any financial contributions to this lifestyle. Throughout the past eight (8) years Father has made almost no effort to obtain a reasonable source of income, but instead has unrealistically applied for employment in the professional or college sports arena for which he has received no favorable responses.

(Trial Court Opinion, 10/24/14, at 2).

The court further found that

> Father has demonstrated a consistent pattern of applying for "dream jobs" but never applying for jobs he could easily attain and which would help provide for Mother and [C]hild. Father is able to pursue this lifestyle by living off of "loans"

provided to him by friends, acquaintances and family members. Accordingly, this [c]ourt holds that Father has willfully failed to obtain or maintain appropriate employment pursuant to Pa.R.C.P. 1910.[1]6-2(d)(4) and imputes an appropriate earning capacity for Father in the support order below.

(*Id.* at 6).

. . . Father is a former NBA basketball player with a college degree in communications/broadcasting. Father also enjoys minor celebrity status. He is a physically capable, educated, articulate man. Father has been periodically providing private basketball lessons charging fifty dollars ($50.00) per hour. The undersigned found it reasonable that Father would be able to provide private basketball lessons for at least twenty (20) hours a week or attain a job where he would make $50,000.00 per year (net monthly income of $3,191.00).

(Order, 10/24/14, at 8).

The court's October 24, 2014 order held Father in contempt of the marital settlement agreement and directed that the $20,397.24 being held in escrow by Domestic Relations was to be released to Mother and applied toward the $50,000.00 that Father agreed to pay her. (*See id.* at 7). Finally, the court also ordered that Father pay child support to Mother in the amount of $840.30 per month from June 8, 2012 to August 9, 2013; $843.30 for the period from August 9, 2013 to October 29, 2013; and $239.33 per month for the period from October 29, 2013 moving forward. (*See id.* at 8-9). In addition to the amounts listed above, the court ordered that Father pay $100.00 per month on arrears with each periodic payment. (*See id.* at 9).

On November 24, 2014, Father filed a timely notice of appeal. By order filed November 26, 2014, the court directed Father to file a concise statement of errors complained of on appeal and to serve a copy on the court. On December 1, 2014, Father's counsel withdrew his appearance on behalf of Father and Father entered his appearance *pro se*. After the trial court granted him two extensions of time to do so, Father *pro se* filed his Rule 1925(b) statement on December 31, 2014; however, he did not serve a copy of the statement of errors on the court. *See* Pa.R.A.P. 1925(b). On January 23, 2015, the trial court issued its opinion incorporating its October 24, 2014 opinion and order. *See* Pa.R.A.P. 1925(a).

Father raises the following questions for our review *pro se*:

1. Whether the [t]rial [c]ourt erred by ordering money escrowed pursuant to the Montgomery County Domestic Relations order No. 10-26039 dated November 19, 2013, for the purpose of child support, to be distributed and paid to [Mother] towards amounts owed pursuant to their [m]arital [s]ettlement [a]greement[?]

2. Whether the [t]rial [c]ourt erred by concluding that [Father] has an earning capacity of $50,000.00 per year (net monthly income of $3,191.00) without basis for the conclusion[?] . . .

3. Whether the [t]rial [c]ourt erred by rendering a support ruling without consideration (as stipulated in footnote 7 of the October 2[4], 2014 Order) of an active pre-existing support ruling from the Commonwealth of Virginia, for the benefit of [Father's] eldest child, . . . , in violation of Rule 1910.16-7 of the Pennsylvania Rules of Civil Procedure[?]

(Father's Brief, at 1) (some argument omitted).

Preliminarily, we agree with the trial court that Father's violation of Rule 1925(b)'s requirements to file and serve his 1925(b) statement

constitutes a waiver of all of his claims. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) ("Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; . . . the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement[.]"). Moreover, even if not waived, Father's issues lack merit.

In his first issue, Father claims that the trial court erred by ordering that the $20,397.24 being held in escrow by Domestic Relations be applied toward the $50,000.00 that Father owed Mother pursuant to their marital settlement agreement rather than applying that money for the purpose of child support. (*See* Father's Brief, at 7-8).

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.
>
> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law.

*Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005) (citations, most quotation marks, and footnote omitted).

An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009), *appeal denied*, 995 A.2d 354 (Pa. 2010) (citations and quotation marks omitted)

Here, Father does not assert that the trial court committed an error of law, but rather challenges the trial court's exercise of its discretion in determining toward which of Father's outstanding debts the escrowed money should be applied. (**See** Father's Brief, at 7-8). Additionally, Father has not asserted that the trial court's decision was the "product of partiality, prejudice, bias or ill will[,]" ***Mackay***, ***supra*** at 533, but rather merely asserts that

. . . this action of the trial court was not in the best interest of the children and cannot be sustained on any valid ground. Nor is it in the best interest of his children. Nor is it in the best interest of the children for their father to be under constant threat of imprisonment because of artificially elevated levels of arrearages.

(Father's Brief, at 7-8) (quotation marks omitted). Notably, Father has not cited any supporting authority for this contention. (**See id.**); ***see also*** Pa.R.A.P. 2119(a), (b).

Additionally, after independent review of the certified record we discern no indication that the trial court's decision was the "product of partiality, prejudice, bias or ill will" and therefore discern no abuse of

discretion. *Mackay*, *supra* at 533. Accordingly, Father's first issue would not merit relief.

In his second issue, Father claims that the trial court abused its discretion by imputing an earning capacity of $50,000.00 for him. (*See* Father's Brief, at 8-11). We disagree.

Our standard of review for a review of child support orders is well-settled:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. . . .

Furthermore, this Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

> When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented. [T]his Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay*, *supra* at 533 (citations and quotation marks omitted).

"Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by

- 10 -

earning capacity than actual earnings." **Baehr v. Baehr**, 889 A.2d 1240, 1244 (Pa. Super. 2005) (citation and quotation marks omitted). "[O]rdinarily, a party who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity." **Id.** at 1243 (quoting Pa.R.C.P. 1910.16-2(d)(4)).

Here, the court found that Father's testimony that he was not capable of earning over minimum wage was not credible. (**See** Trial Ct. Op., 10/24/14, at 5; N.T. Hearing, 10/15/14, at 108-10); **see also Mackay**, **supra** at 533. Accordingly, the court imputed an income to Father equal to an earning capacity of $50,000.00 a year (net monthly income of $3,191.00). (**See** Order, 10/24/14, at 7-8). In calculating this amount, the court considered Father's former occupation, education, "minor celebrity status," physical capability, and the fact that Father had been providing private basketball lessons charging fifty dollars an hour. (**Id.** at 8).

The record supports the trial court's findings, and we discern no partiality, prejudice, bias or ill will in the trial court's exercise of its discretion. **See Mackay**, **supra** at 533. Therefore, we conclude that, the court did not abuse its discretion in imputing an earning capacity for Father of $50,000.00 per year and using that amount to calculate his support obligations. **See Baehr**, **supra** at 1243. Father's second issue would not merit relief.

In his third issue, Father claims that the court erred when it rendered a support ruling without considering a pre-existing support ruling for Father's eldest child. (*See* Father's Brief, at 11-12). Specifically, he argues that under Pennsylvania Rule of Civil Procedure 1910.16-7 the trial court should have considered the expenses incurred by Father's support for this child and abused its discretion when it failed to adjust his support obligation accordingly. (*See id.*). We disagree.

As stated above, we review child support orders for an abuse of discretion. *See Mackay*, *supra* at 533.

Pennsylvania Rule of Civil Procedure 1910.16-7, which governs awards of child support when there are multiple families, provides in pertinent part that

> (a) When the total of the obligor's basic child support obligations equals fifty percent or less of his or her monthly net income, there will generally be no deviation from the guideline amount of support on the ground of the existence of a new family. . . .
>
> (b) When the total of the obligor's basic support obligations exceeds fifty percent of his or her monthly net income, the court may consider a proportional reduction of these obligations. . . .

Pa.R.C.P. 1910.16-7(a), (b). In *McCarty v. Smith*, 655 A.2d 563 (Pa. Super 1995), this Court explained that any deviation from the guideline support "must be based and supported by testimony or evidence[.]" *Id.* at 566.

Here, Father argues "it was an abuse of discretion for the trial court to not consider the expenses incurred by [him] as a result of his child support

obligations in Virginia." (Father's Brief, at 12). However, as the trial court correctly explained

> The only evidence [Father] presented with respect to his Virginia child support obligations was an NBA Players' Pension plan print-out and accompanying testimony which indicated his pension funds were all being directed towards his Virginia child support obligations. Appellant presented no evidence to demonstrate that any other funds were being utilized for his Virginia obligations. [The trial court] did not account for any of Appellant's NBA pension funds when calculating its support determination. Thus, there is no indication that Appellant's basic child support obligation exceeds fifty percent (50%) of the monthly net income the [c]ourt attributed to Appellant for the period prior to his daughter's emancipation in Virginia. . . .

(Trial Ct. Op., at 4; *see also* N.T. Hearing, 6/09/14, at 135-36; N.T. Hearing, 10/15/14, at 95-97, Exhibit F-14).

The court imputed income for Father of $50,000.00 per year (which did not include Father's NBA pension), which the court used to calculate his support obligation. (*See* Trial Ct. Op., at 4; Order, 10/24/14, at 8). Father neither testified, nor entered any evidence to support that the total of his child support obligations equaled fifty percent or more of his net monthly income, which would have allowed the court to "consider a proportional reduction of these obligations[.]" Pa.R.C.P1910.16-7(b); *see McCarty*, *supra* at 566.

Furthermore, upon independent review, we discern no partiality, prejudice, bias or ill will in the trial court's determination and therefore discern no abuse of discretion. *See Mackay*, *supra* at 533. Accordingly, Father's third issue would not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/28/2015