J-S65008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| J.M.K. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| P.R.K. | : | No. 1088 MDA 2019 | |

Appeal from the Order Entered June 5, 2019
In the Court of Common Pleas of Franklin County
Domestic Relations at No(s): DRS 2018 00021,
PACSES No. 651116865

| | | | |
|---|---|---|---|
| P.R.K. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| J.M.K. | : | | |
| | : | | |
| Appellant | : | No. 1089 MDA 2019 | |

Appeal from the Order Entered June 5, 2019
In the Court of Common Pleas of Franklin County
Domestic Relations at No(s): DRS 2018 00596,
PACSES No. 670117315

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED JULY 17, 2020**

Appellant, J.M.K. ("Mother"), appeals from the order entered in consolidated child support and alimony *pendente light* ("APL") matters, that dismissed all of her exceptions to the report and recommendations of the

---

[*] Retired Senior Judge assigned to the Superior Court.

support master. Specifically, Mother challenges the trial court's determination to assess an earning capacity for her. After careful review, we affirm.

The parties are husband and wife who are currently separated and in the process of divorce proceedings. They were married on May 29, 2007 and separated in August 2017. The parties have one minor child born of the marriage, on July 1, 2013.

In August of 2017, after a custody trial was held, the trial court entered an order, upon agreement of the parties, stating that legal and physical custody would be shared between the parties, and permitting Mother to relocate to North Carolina. In February of 2018, an order was entered obligating Father to pay child support to Mother, due to his higher income. At the time, the parties continued to share a 50/50 custodial arrangement.

In May of 2018, after a hearing, a new order was entered maintaining shared legal custody between the parties, but giving Father primary physical custody. The order specified that the August 2017 custody order would remain in effect until the Sunday prior to the first day of the 2018-2019 school year, at which point the new order would go into effect.

In August of 2018, Father filed a petition to modify support based on his current role as the primary custodian. A month later, the trial court terminated Father's support obligation.[1]

---

[1] The support termination was made effective as of August 10, 2018.

On October 17, 2018, Father filed a complaint for child support against Mother. Over the next few days, Mother filed a complaint in divorce and a complaint for APL.

On November 19, 2018, a support conference was held after which Mother was imputed an earning capacity of $75,000 per year. Mother filed a demand for an appeal hearing, challenging her assigned earning capacity.

On January 9, 2019, a *de novo* hearing was held before a support master. Mother testified that she lives in North Carolina and works as a waitress, making $3.75 per hour plus tips. **See** N.T., *De Novo* Hearing, 1/9/2019, at 5, 8. Before moving, she worked for Volvo Construction Company making approximately $75,000 per year. **See id**. at 9. A prior custody order permitted, with Father's consent, Mother to relocate to North Carolina and provided for a 50/50 split in physical custody. **See id**. at 9-10.

Mother made clear that if she were permitted to relocate, she would not be able to maintain her job at Volvo once the project she was working on was completed. **See id**. at 11. After moving to North Carolina, Mother continued her employment with Volvo until March 31, 2018, when she completed the project she was working on. **See id**. at 12. She collected unemployment until she began a new job in June of 2018 at GF Linamar making approximately $75,000 per year. **See id**. at 13-14.

Mother informed GF Linamar of the custody order which required flexibility in her schedule in order to exercise her physical custody times. **See**

*id*. at 14-15. Once the new custody schedule started at the beginning of the school year, Mother began having problems with the flexibility with her schedule at GF Linamar, which led to her quitting her job. *See id*. at 17-18.

After leaving GF Linamar, Mother applied for numerous jobs outside of her field of employment. *See id*. at 20. She found a job in her field through a temp agency, working 20 hours per week and making $16 per hour. *See id*. at 21. That position ended after a week when the company reallocated the responsibilities for her position to someone else within the company. *See id*.

At the time of the hearing she was still applying to jobs and waiting to hear about interviews. *See id*. at 24. In the meantime, she had taken a position as a waitress. *See id*. She was also working with a recruiting firm that had reached out to her to find a position in her field in the area, but such positions are limited. *See id*. at 24-25.

On February 4, 2019, the support master filed her report and recommendation. The master's report indicated Mother's income would be computed from her most recent employment at GF Linamar where she made $75,000. Master's Report and Recommendation, at 4 (paginated for clarity). In relevant part, the master noted that Mother had voluntarily left both of her prior positions, and indicated that Mother should be held to an earning capacity of $75,000 per year, based on her "age, education, training, work experience, earnings history and child care responsibilities". *Id*. at 5. Using this amount for calculations, the master recommended that Mother pay

$42.78 per month for child support. *Id*. at 6. This amount was based on the net difference between Mother's calculated child support obligation of $385.51 per month and Father's calculated APL obligation of $342.73 per month. *Id*.

On February 5, 2019, the trial court entered an order approving the master's report and recommendation, and directing domestic relations to prepare an administrative order consistent with the master's decision. The trial court subsequently entered an allocated order based on the master's report and recommendation.[2] The order imputed to Father a net monthly income of $6,368.59 and imputed to Mother a net monthly income of $5,022.76. Mother was ordered to pay $42.78 per month for child support, plus arrears. The trial court noted that the support amount was calculated considering an offset from an APL obligation.

On February 27, 2019, Mother filed timely exceptions to the master's report and recommendation. Both parties filed briefs with the court. On April 25, 2019, a hearing was held on Mother's exceptions. On June 5, 2019, the trial court entered an order denying all of Mother's exceptions.

Mother timely filed two notices of appeal, one from the order calculating Father's APL obligation, and one from the order calculating her child support obligation, pursuant to **Commonwealth v. Walker,** 185 A.3d 969 (Pa. 2018). **Walker** requires appellants to file a separate notice of appeal for each trial-

---

[2] While the order is dated February 6, 2019, the order was not filed until February 8, 2019. **See** Order of Court - Allocated, 2/8/2019.

court docket number they intend to appeal. However, Mother listed both of the docket numbers on each notice.

While her two consolidated appeals were pending, a three-judge panel of this Court filed a published opinion in **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019). That panel construed **Walker** to mean that "we may not accept a notice of appeal listing multiple docket numbers, even if those notices are included in the records of each case." **Creese**, 216 A.3d at 1144. Instead, the panel concluded "a notice of appeal may contain *only one* docket number." **Id.** (emphasis added). The panel quashed the appeal. Neither party filed a petition for allowance of appeal with the Supreme Court, rendering **Creese** a final disposition and setting precedent in this Court.

Here, Mother filed two separate notices of appeal, as **Walker** directed. Although the notices contained both lower court docket numbers, separate filing fees were paid. As we did in **Creese**, this Court issued a rule to show cause why this appeal should not be quashed pursuant to **Walker**. Mother filed a response, stating that she was aware separate notices needed to be filed in both matters, and therefore she contacted domestic relations regarding the format to use for her notices of appeal.

She contends domestic relations instructed her to caption the notice of appeal in the same format as the trial court had captioned the order, and the notice of appeal would be filed and docketed in both matters so long as each matter was included in the caption and the filing fee was paid for both matters.

- 6 -

She then ensured the document was filed and docketed in both cases. Mother believed she had satisfied the dictates of Rule 341, its Note and **Walker** by ensuring the appeals were filed and docketed at both matters and because she paid two filing fees, which the trial court accepted.

Our Court recently granted *en banc* review to decide whether **Walker** and Rule 341 dictate that only one number may appear on a notice of appeal. In an opinion filed in July 2020, this Court expressly overruled **Creese**'s determination that "a notice of appeal may contain only one docket number." **Commonwealth v. Johnson**, ____ A.3d.____ (Pa. Super. 2020) at *____.

We observed that Rule 341 and **Walker** make no mention of case numbers on a notice of appeal. **See id**. To be sure, the error in **Walker** was the filing of a **single** notice of appeal affecting multiple cases and several defendants. The bright-line rule set forth in **Walker** only required an appellant to file a **"separate"** notice of appeal for each lower court docket the appellant was challenging.

Here, it is indisputable that Mother filed a separate notice of appeal for each docket below, because she ensured separate documents were filed and docketed in each matter, and paid two separate filing fees. Based on our review of **Walker** and Rule 341, Mother filed separate notices that perfected two appeals from each of the lower court dockets. Because Mother complied with the mandates of **Walker**, as construed by this Court in **Johnson**, we decline to quash this appeal and will review the merits of Mother's claims.

Before addressing Mother's substantive issues, we must first determine the appealability of the June 5, 2019 order. Questions concerning appealability of an order go to the jurisdiction of the court to hear the appeal and may be raised *sua sponte*. **See Fried v. Fried**, 501 A.2d 211, 212-213 (Pa. 1985).

This Court has jurisdiction to consider claims related to child support, but we cannot address issues related to spousal support until a divorce decree has been entered and the certified record shows that no economic claims remain to be decided. **See Hrinkevich v. Hrinkevich**, 676 A.2d 237, 239 (Pa. Super. 1996).

> A spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved. The rationale behind this rule is that, for purposes of judicial efficiency, in the event that an initial award of interim relief is granted in error, the court has the power to make adjustments in the final settlement via the equitable distribution of marital property. Thus, when all economic matters involved in a divorce are resolved, any support order can be reviewed and corrected when the court finalizes the equitable division of the property.

**Capuano v. Capuano**, 823 A.2d 995, 998–99 (Pa. Super. 2003) (citations omitted).

Here, it is undisputed that the order denying Mother's exceptions to the master's report and recommendation was entered during the pendency of a divorce action and a divorce decree has yet to be entered. Accordingly, the trial court's June 5, 2019 order is final and appealable as it relates to child support only. **See id**. At 998. Because a divorce action was pending between the parties during the time of this appeal, we are constrained to find the order

interlocutory and unappealable as it relates to spousal support. ***See id***. at 99. We will therefore address Mother's arguments only as they relate to child support.

Our standard of review for a child support order is well-settled.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Kimock v. Jones***, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

Mother raises three issues for our review regarding the trial court's assignment of and calculation of an earning capacity for her for support purposes.

First, Mother claims the trial court erred in imputing an earning capacity of $75,000 to Mother. She argues the trial court failed to properly consider that no support order was in place at the time Mother resigned from her prior employment and failed to apply the relevant rules and case law regarding earning capacity.

Both the trial court and the master acknowledged the fact that no support order was in place at the time Mother left her job at G.F. Linamar. The trial court also acknowledged that there was no indication that Mother

voluntarily reduced her income in an attempt to avoid child support. While the master and trial court took these factors into consideration, they found that neither fact affected the ability to assign Mother an earning capacity under Pa.R.C.P. 1910.16(d).

Mother takes issue with assigning her an earning capacity under both Pa.R.C.P. 1910.16-2(d)(1) and Pa.R.C.P. 1910.16-2(d)(4), both of which the master cited to in her discussion related to calculating income available for support. Mother claims the trial court failed to consider numerous relevant circumstances under both rules.

While we agree the master cited to Pa.R.C.P. 1910.16-2(d)(1) in its discussion and further found that Mother voluntarily left her position, we find the Master ultimately concluded its recommendation to impute an earning capacity to Mother by quoting directly from Pa.R.C.P. 1910.16-2(d)(4). ***See*** Master's Report and Recommendation, at 5 (paginated for clarity). Under Pa.R.C.P. 1910.16-2(d)(4), which deals with the assignment of an earning capacity when a party willfully fails to maintain appropriate employment, it is not relevant whether or not Mother was trying to avoid a support obligation.

Mother further contends the master/trial court failed to address other factors it is required to consider under the rule, including the availability of employment and the party's good faith efforts to find employment. Mother's argument is belied by the record. The master clearly took these factors into consideration, as these factors were addressed at the hearings, as well as in

the master's report. **See** Master's Report and Recommendation, at 3 (paginated for clarity).

> There is no requirement in the Rule that the trial court **must** adjust the earning capacity to reflect the "[a]ge, education, training, health, work experience, earnings history and child care responsibilities" of the party to which the earning capacity is being assigned; the Rule requires only that the trial court consider these factors.

**Morgan v. Morgan**, 99 A.3d 554, 558-559 (Pa. Super. 2014) (citations and internal quotation marks omitted) (emphasis added). As stated above, the trial court clearly considered these factors, and simply found that the remaining factors weighed more in favor of imputing an earning capacity.

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. *Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.*

**Baehr v. Baehr**, 889 A.2d 1240, 1244 (Pa. Super. 2005) (citation omitted). The master clearly considered these very factors in making its determination that Mother's earning capacity was greater than her actual earnings. The record supports that conclusion.

The record reflects that Mother is forty years old and there is no evidence in the record as to any health conditions that impact Mother's ability to be gainfully employed. As of the January 2019 hearing, Mother had an associate's degree in information systems, and had over eighteen years of

experience as a purchasing buyer. Prior to leaving her position in March of 2018, Mother worked for Volvo from 1999-2004, and from 2011-2018, most recently earning $75,000 per year, The pertinent factors certainly indicate Mother's earning capacity is far greater than her actual earnings.

"Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity." **Woskob v. Woskob**, 843 A.2d 1247, 1254 (Pa. Super. 2004) (citation omitted). After her position at Volvo ended, Mother collected unemployment from March 31, 2018 until June 15, 2018. She then worked for a temp agency for one week, working 20 hours per week, and making $16 per hour. She testified that during this time, she contacted various employers to inquire as to employment opportunities and has applied to numerous jobs, most, if not all, outside of her field of work.

Her testimony indicated she had recently started working with a recruiting firm but had not received an interview as of the time of the hearing. When asked if she is still continuing her job search, Mother testified that she is still looking. We are not in a position to reweigh the testimony and will defer to the master's findings on this matter, as the master has the opportunity to observe and assess the parties firsthand. **See Childress v. Bogosian**, 12 A.3d 448, 455-56 (Pa. Super. 2011). The court stated that based on the evidence presented by the master, it believed Mother willfully failed to find adequate employment commensurate with her ability. The record supports

that finding. The trial court therefore properly considered the requirements of Rule 1910.16–2(d), and so we may not disturb its determination.

It is clear that Wife has the potential to earn $75,000 per year even in North Carolina. Nonetheless, Wife opted to leave her position at G.F. Linamar, and currently makes substantially less. Although the record supports Mother's assertion that job opportunities are more limited in Mother's current location, and that Father supported Wife's decision to move to North Carolina, we cannot find the court abused its discretion in finding that the income Wife currently receives is simply not commensurate with her admitted earning potential, when considering her age, health, mental and physical condition, training, and earnings history **as a whole.**

In Mother's second issue, she contends the trial court erred when it determined that the fact that Father had not filed a child support complaint until after Mother left her prior employment was not relevant and did not impact the support calculation. As we addressed this matter in Mother's first issue, we find Mother's second issue without merit.

In Mother's final issue, she contends the trial court erred when it determined that it was not relevant that Father agreed to allow Mother to relocate to North Carolina when he knew her employment status would be impacted. Mother provides no case law to support her suggestion that Father has somehow waived any further challenge to the economic impact of her

relocation. As noted by the trial court, we are also unable to find any cases which support her position.

"[I]t is well-settled that one parent cannot contract away the right of his or her child to seek adequate support from the other parent." *Miesen v. Frank*, 522 A.2d 85, 87 (Pa. Super. 1987) (citations omitted). We therefore agree with the trial court that Mother's argument in this regard must fail. To interpret Father's concession to Mother's request to relocate in a custody matter as a waiver of any future challenge to the economic impact of relocation in a support matter would undermine the parent's legal duty to support their children to the best of their ability. We cannot agree with Mother that we must interpret Father's concession to Mother's request to relocate as consent to Mother's voluntary reduction in income, especially considering she was able to find employment after relocation commensurate with her experience and salary and voluntarily chose to leave that position as well, without the knowledge or consent of Father. A child has a right to be supported by his or her parents. We cannot permit a parent to remove that right because of an agreement between herself and the child's father. *See id*.

As none of Mother's issues on appeal merit relief, we affirm the order denying her exceptions to the master's report and recommendation.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2020