J-S12044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.B.G.-F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.T.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2977 EDA 2025 |

Appeal from the Decree Entered October 30, 2025
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2024-A9102

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED APRIL 20, 2026**

B.T.G. (Mother) appeals from the decree involuntarily terminating her parental rights to her biological child,[1] W.B.G.-F. (born 11/2022) (Child), pursuant to Sections 2511(a)(5) and (8), and Section 2511(b) of the Adoption Act.[2]  **See** 23 Pa.C.S. §§ 2101-2938.  After careful review, we affirm.

The orphans' court set forth the facts of this case as follows:

[C]hild was born [in November 2022.  On the date of Child's birth, Mother and Child] tested positive for marijuana and amphetamine.  The hospital staff reported said findings to [the Bucks County Children and Youth Social Services Agency (the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court appointed Linda M. Shick, Esquire, to represent Child's legal and best interests.  **See** Order, 3/31/25; **see also** N.T. Termination Hearing, 4/23/25, at 8; 23 Pa.C.S. § 2313(a).

[2] The orphans' court also terminated the parental rights of Child's biological father (Father).

Agency)] and described Mother's behavior as erratic and argumentative. Following the report, Mother and the Agency agreed to a safety plan for [Child], wherein Mother agreed to supervised contact with [Child] and [one of her two other children that are not the subject of this appeal] at [the home of Mother's mother (MGM).] At the time of [Child]'s birth, [Father] was incarcerated and was not an approved supervisor for the agreed-upon safety plan. The approved supervisor of the safety plan was [MGM.] On November 26, 2022, the Agency administered a drug test and Mother tested positive for marijuana and methamphetamine. On November 30, 2022, the Agency caseworker assigned to the case arrived at Mother's home and found Mother unsupervised with [Child]. On December 14, 2022, Mother again tested positive for marijuana pursuant to an Agency[-]administered drug test. On December 22, 2022, it was reported to the Agency that Father physically abused Mother and an emergency protective order was issued [] and [Child] was placed in the care of the Agency. Father surrendered himself to police on December 23, 2022, and was held in Bucks County Correctional Facility on charges of simple assault and harassment. On the same day, [Child] was placed with Mother based upon her agreement that she would remain on a safety plan with the approved supervisor, [MGM].

On January 4, 2023, Mother signed a voluntary placement agreement and [Child] was placed in the legal and physical custody of the Agency. Following [Child]'s placement with the Agency, on January 6, 2023, January 9, 2023[,] and January 11, 2023, Mother tested positive for marijuana on Agency[-] administered drug tests. On January 23, 2023, Mother tested positive for amphetamine, methamphetamine[,] and marijuana on an Agency[-]administered drug test. On January 30, 2023, after a hearing before the dependency court, [Child] was adjudicated dependent.

[T]he Agency[] fil[ed] the petition for involuntary termination of parental rights on November 22, 2024[. . . .] A hearing was held on April 23, 2025 on the petition[, as well as] on May 6, 2025[, August 11, 2025, and October 15, 2025.]

Orphans' Court Opinion, 12/22/25, at 1-3 (citations and unnecessary capitalization omitted). On October 29, 2025, the court issued a decree terminating Mother's parental rights with respect to Child pursuant to Sections

2511(a)(5) and (8). **See** 23 Pa.C.S. §§ 2511(a)(5), (a)(8), and 2511(b). On November 21, 2025, Mother filed a timely notice of appeal and concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).

On appeal, Mother presents the following issues for our review:

1. Did the [orphans'] court erroneously grant [the Agency's] petition to involuntarily terminate [Mother's] parental rights [] pursuant to 23 Pa.C.S. § 2511(a)(5) and (a)(8) when the Agency had failed to prove the grounds thereunder by clear and convincing evidence?

2. Did the [orphans'] court erroneously find that [Child's] needs and welfare [] as contemplated under 23 Pa.C.S. § 2511(b) were best met by terminating [Mother's] parental rights[?]

Mother's Brief, at 6.

In her first issue, Mother argues that the court erred because, in terminating Mother's parental rights, the court destroyed a necessary and beneficial bond between Mother and Child. **See** Mother's Brief, at 12. Regarding that alleged bond, Mother relies on her own testimony, as well as that of Agency Caseworker Kaitlin Howey, which indicated that Child referred to Mother as "mommy."[3] **Id.** Mother concludes, without citation, that "[a]

_____

[3] Mother presents this argument in her brief, without any citation to the record, in violation of Pennsylvania Rule of Appellate Procedure 2119. **See** Pa.R.A.P. 2119(c) ("If reference is made to [. . .] any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (**see** Pa.R.A.P. 2132)."); **see also J.J. DeLuca Co. v. Toll Naval Associates**, 56 A.3d 402, 413 (Pa. Super. 2012) (appellate claim waived when appellant failed to present any citation to record to support
*(Footnote Continued Next Page)*

biological parental bond with a child is undeniable and termination of such a bond has led to adverse outcomes for exceedingly high numbers of foster children." *Id.* We find no relief is due.

The well-settled standard of review of a grant of a termination of parental rights petition is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations, quotation marks, and brackets omitted). Further, the Agency "must prove the grounds for termination of parental rights under 23 Pa.C.S. § 2511 by clear and convincing evidence." *Id.* (citation omitted). "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re C.P.D.*, 324 A.3d 11, 24 (Pa. Super. 2024). Also, "the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses[,] and all conflicts in testimony are to be

_____

that claim). Nevertheless, here, we do not find waiver because our review is not impeded by the omission.

resolved by the finder of fact." ***Id.*** (citation and brackets omitted). Moreover, we need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." ***In re M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022).

We have explained that a Section 2511 analysis is bifurcated as follows:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child. Although a needs and welfare analysis is mandated by the statute, it is distinct from and not relevant to a determination of whether the parent's conduct justifies termination of parental rights under the statute. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child.

***In re Adoption of R.J.S.***, 901 A.2d 502, 508 (Pa. Super. 2006) (citations omitted).

"When an emotional bond is present between parent and child, the court must consider the effect of its permanent severance on the child." ***Id.*** at 514. Pennsylvania law does not require a formal bond analysis, but instead focuses on continuity of relationships and whether the termination of a parent-child bond would have a detrimental effect on the child. ***See Adoption of C.J.P.***, 114 A.3d 1046, 1054 (Pa. Super. 2015).

Here, we limit our review to the orphans' court's analysis under Subsection 2511(a)(8).  **See** 23 Pa.C.S. § 2511(a)(8); **see also M.E.**, 283 A.3d at 830.  Subsection 2511(a)(8) states that parental rights to a child may be terminated if "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child."  23 Pa.C.S. § 2511(a)(8); **see also In re Adoption of M.E.P.**, 825 A.2d 1266, 1275-76 (Pa. Super. 2003) (setting forth three prongs for establishing valid termination under Section 2511(a)(8)).

As to the third requirement, "'a best interest of the child' analysis under both [Sections] 2511(a)(8) and 2511(b) requires consideration of 'intangibles such as love, comfort, security, and stability.'" **In re I.J.**, 972 A.2d 5, 12 (Pa. Super. 2009) (citation and brackets omitted).  Further, in conducting the Section 2511(a)(8) review, the court should analyze:

> the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful.  The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.  Most importantly, adequate consideration must be given to the needs and welfare of the child.

**Id.** (citations and ellipsis omitted).

Instantly, the orphans' court analyzed Mother's first issue as follows:

In Mother's case, while we recognize that there is a relationship between Mother and [Child], there exists no beneficial or parental bond between them. We note that Mother attended approximately one third of the visits scheduled in this case. When she did attend, testimony established that many times she arrived late or left early. Ms. Howey testified that at the July 28, 2025 visitation, Mother was rummaging through her bags while [Child] played with a dollhouse by himself.

Furthermore, testimony from Mother established that she is incapable of providing a safe and stable residential environment for [Child.] [. . .] The record reflects that Mother made minimal efforts to visit [Child], to create a safe environment to reunify with [Child] and was primarily concerned with her grievances with the Agency rather than the well-being, comfort and needs of [Child.] Mother's testimony at [the] hearing confirmed that she failed to rectify the issues raised to her by the Agency and her continuing failure to maintain sobriety, appropriate housing, stable employment[,] and documented mental health treatment. Ms. Howey testified that [Child] is thriving in his foster placement and that his current resource parents wish to adopt him. She stated that [Child] has a strong bond with his resource parents and his siblings in his foster placement, specifically his eldest foster sister[.] Accordingly, we found that termination of Mother's parental rights regarding [Child] would best serve the needs and welfare of [Child.]

Orphans' Court Opinion, 12/22/25, at 14-15 (citations omitted).

After our review, we observe that Mother does not challenge that Child has been in the Agency's care for at least 12 months. Further, Mother does not direct any argument to that portion of the analysis regarding her own conduct as the parent; instead, Mother's challenge is based on an analysis regarding Child's needs and welfare and the alleged bond she shares with

Child.[4]  *See R.J.S.*, 901 A.2d at 508.  Despite Mother's desired outcome, the

orphans' court did not credit Mother's testimony regarding her alleged bond

with Child; instead, the orphans' court credited the testimony of Caseworker

Howey, whose testimony established that there was no parental bond between

Mother and Child, let alone a necessary and beneficial bond, where the

relationship between Mother and Child was better characterized as

"playmates."  *See* N.T. Termination Hearing, 5/6/25, at 37-38 (Caseworker

Howey testifying that "[Child] definitely has a parental bond with the current

_____

[4] We recognize that Section 2511(a)(8) and Section 2511(b) each require an analysis of the needs and welfare of the child, which we have explained as follows:

> Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child."  Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent.  Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*) (citations omitted).

foster family[. . . . W]ith that being said, do I think [Child] knows who [Mother] is? Yes, I do. I think he knows [Mother]. I think he, you know, enjoys the time that he is there with her, but looks to it as a playmate visit. He goes, he has the visit, he enjoys it, and then he comes home. [. . .] And he calls [the foster parents] ["]mommy["] and ["]daddy.["] And at this point, as I stated, I definitely think there is a parental bond with the foster parents[.]").

Further, the record reflects that it was in Child's best interest to terminate Mother's parental rights where Child has significant health needs that Mother cannot attend to, but to which the foster parents have attended diligently. *See id.* at 37 (Caseworker Howey testifying that "it would meet [Child's] physical, emotional, and developmental needs [. . .] to terminate [Mother's] parental rights"); *id.* at 28 (Caseworker Howey testifying that Mother was "combative" and "argumentative" with Child's doctors and Mother "was more hyperfocused on [] that the doctors are asking for all these types of things, and [Mother] doesn't believe that"); *id.* at 30-31 (Caseworker Howey testifying that Mother is not able to provide for all of Child's medical needs "due to the reasons that [Child] came into care that are still present, which is[:] focusing on her mental health and making sure she is following through with any and all recommendations; maintaining and obtaining her sobriety; and just providing that safety and nurturing for a child, especially, a child of [Child]'s age and the excessive medical needs that he has"); *id.* at 26 (Caseworker Howey testifying that "[Child] currently is in early intervention

services[ and] receives physical therapy, occupational therapy, vision therapy, speech therapy[, and f]eeding therapy"); *id.* at 22 (Caseworker Howey testifying that Child consistently wears helmet for protection: "The helmet was, I guess you could say, recommended from the pediatrician as to [Child] falling consistently, not being stable on his feet. So[,] the pediatrician wanted him to wear that helmet 24/7 other than sleeping and in the car, so that if he would fall or [was] not stable on his feet, he would have protection on his head."); *see also* N.T. Termination Hearing, 4/23/25, at 84 (Child's medical history includes that he wore eye patch and had laser eye surgery); *id.* at 85 (Child has medically prescribed leg braces); *id.* at 34 (Caseworker Howey testifying that "[Child] gets along really well with the other children [in the pre-adoptive resource home]. Anytime I go out there, they are playing with toys on the carpet; they are sharing different books. He knows them by name. He does call [the foster parents] [`]mommy['] and [`]daddy.['] They comfort him when he needs it. They attend to all of his needs."). We may not reweigh these credibility findings. *See Baehr v. Baehr*, 889 A.2d 1240, 1245 (Pa. Super. 2005) (stating that trial court, as factfinder, is entitled to weigh evidence and assess credibility); *see also C.P.D.*, 324 A.3d at 24. Indeed, Mother only attended 57 out of 168 offered visits with Child through the Agency over the life of the case. *See* N.T. Termination Hearing, 4/23/25, at 175. Accordingly, we conclude that the record supports the orphans' court's finding, by clear and convincing evidence, that there was no necessary and beneficial bond between Mother and Child, and termination would best serve

Child's needs and welfare. *See T.S.M.*, 71 A.3d at 267; *see also* 23 Pa.C.S.

§ 2511(a)(8). Thus, no relief is due on Mother's first issue.

In her second claim, Mother essentially repeats her first argument, without citation to the record, and reasserts that:

> It is well accepted that parental separation is an adverse childhood experience that can have lasting, negative effects on health, wellbeing in childhood and life opportunities, such as education and job potential, well into adulthood. The [t]rial [c]ourt's determination that the needs and welfare of the child were best met by terminating the parental rights of the Mother was improper because terminating that relationship[] would destroy a bond for the Child that can lead to lasting, negative effects.

Mother's Brief at 14-15. Again, no relief is due.

Once termination under Section 2511(a) is established, the court proceeds to an analysis of Section 2511(b), wherein the court "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In the Interest of I.E.P.*, 87 A.3d 340, 346 (Pa. Super. 2010) (citation omitted). In this analysis, the court considers numerous factors, as follows:

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.
>
> Moreover, [t]he court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*C.L.G.*, 956 A.2d at 1009-10 (citations and ellipsis omitted). Further, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

Here, the orphans' court evaluated Mother's second appellate issue as follows:

> When questioned at [the] hearing, Ms. Howey testified that Mother cannot meet [Child]'s medical needs due to her ongoing mental health struggles and issues with sobriety. Furthermore, she testified that there were multiple instances where Mother did not engage with [Child] at the visits she did attend. She testified that there were visits where Mother kept [Child] in the stroller for the entire visit. Ms. Howey testified that there were multiple times where Mother was "more adamant about what I am talking to her about rather than what is going on with [Child.]" Ms. Howey testified that she scheduled a particular therapist to attend a visit to help Mother learn how to properly feed [Child.] She testified that "I sat through the entirety of the feeding therapist, and Mother totally blew her off the entire time while the therapist was trying to help Mother and teach Mother how to feed [Child.]" This testimony demonstrated that [Child] has significant health difficulties and physical needs that Mother cannot or will not attend to. Testimony at [the] hearing established that [Child]'s foster parents have attended every medical appointment scheduled [] and that [Child] is medically up to date. Ms. Howey stated that she had no concern regarding [Child]'s resource parents and their ability to care for [him.]

> Mother has seen [Child] on an irregular basis since [Child] has been in care. Testimony at [the] hearing established that [M]other attended approximately one third of the scheduled visitations. Furthermore, Ms. Howey testified that [Child] has been in a traditional foster home since November 2023. She testified that the [foster] family has four other children and that [Child] gets along well with his foster siblings. She stated that he calls his foster parents "mommy" and "daddy" and that he looks

to them for care and comfort. She testified that "when it comes to observing families, observing the child in care, observing foster families, [Child] definitely has a parental bond with the current foster family." Ms. Howey testified that she believes from her observations that [Child] treats his visitations with Mother as a "playmate visit," but that he returns from the visit to his home and looks to his foster parents as the parental figures in his life. She further stated that [Child]'s current foster parents intend to adopt [him.]

Based upon this record, we perceived that termination of Mother's parental rights regarding [Child] would promote his physical, emotional and developmental needs. Termination of Mother's parental rights would not "destroy an existing, necessary, and beneficial relationship." In sum, we found that any potential harm caused by severing the casual bond between [Child] and Mother would be outweighed by the benefit of permanency that [Child]'s foster family currently provides.

Orphans' Court Opinion, 12/22/25, at 16-17 (citations and brackets omitted).

Instantly, aside from her bald assertions of negative lasting effects, Mother offers no more support for her position than she provided in the argument for her first appellate claim. As we discussed above, the instant record reflects that the Agency established by clear and convincing evidence that it is in Child's best interest for Mother's parental rights to be terminated. Specifically, there is no necessary and beneficial bond between Mother and Child where the relationship between them is best characterized as "playmates" and because the pre-adoptive foster parents meet Child's significant health and developmental needs where Mother is not able to do so. *See In re T.D.*, 949 A.2d 910, 920-23 (Pa. Super. 2008) (affirming termination of parental rights where "obvious emotional ties exist" between the child and parents, but parents found to be either unwilling or unable to

satisfy minimum requirements of parenthood and where preserving parents' rights would prevent child from attaining permanency); *see also In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (commenting that child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting"); *see also In re Adoption of T.B.B.*, 835 A.2d 387, 398 (Pa. Super. 2003) ("if competent evidence supports the court's findings, we will affirm even if the record could also support the opposite result").  Accordingly, no relief is due on Mother's second issue.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/20/2026